STATE of Iowa, Appellee,

v.

Denny Lee HORTON, Appellant.

No. 92–1430.

Supreme Court of Iowa.

Dec. 22, 1993.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Michael H. Smith, Asst. Atty. Gen., Richard R. Phillips, County Atty., and Ronald D. Arispe, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

Defendant Denny Lee Horton assigns two errors[1] in this appeal from his conviction of fraudulent practices. *See* Iowa Code § 714.8(3) (1991) (executing a false certificate). We affirm.

A license is required of those commercially harvesting freshwater mussels from Iowa waters. *See* Iowa Code § 109B.1(2) (1991) (now Iowa Code § 482.1(2) (1993)). The amount of fee for such a license depends upon the applicant's residence. Iowans are charged $100; nonresidents are charged $2500. 1991 Iowa Acts ch. 170, § 3 (codified as Iowa Code Supp. § 109B.4(6) (1991) and now found at Iowa Code §§ 482.4(6)(g) & (*l*)). An applicant is a resident after residing in Iowa for more than twelve months. 1991 Iowa Acts ch. 170, § 1 (codified as Iowa Code Supp. § 109B.2(5) and now found at Iowa Code § 482.2(5)).

Horton obtained a resident mussel license from the Iowa department of natural resources (DNR) in April 1992. In doing so he paid the $100 fee and signed the mussel license application. Horton certified in the application that he had been a resident of Iowa for at least twelve months, and had not claimed residency in another state during that period. In reality Horton claimed residency in Illinois only ten months earlier. Horton obtained an Illinois driver's license

and an Illinois mussel license in May of 1991, within one year of his Iowa application. Horton's Iowa residence actually began when he moved to Muscatine in July of 1991, eleven months prior to his application.

Horton was arrested in May of 1992 after a conservation officer observed him diving for mussels on the Iowa side of the Mississippi River. The State alleged that Horton fraudulently obtained a resident commercial mussel license and charged him with one count of fraudulent practices in the second degree, in violation of Iowa Code section 714.8(3) (1991). Section 714.8(3) provides:

A person who does any of the following acts is guilty of a fraudulent practice ... (3) Knowingly executes or tenders a ... false certificate, if the ... certificate is required by law....

Horton was convicted following a bench trial and sentenced to a term not to exceed five years. The case is before us on Horton's appeal.

■ I. Horton first claims that an element of the offense is missing. He alleges that the application he signed was not "required by law," as specified by section 714.8(3). While Horton admits that a *license* to fish for mussels is required by law, he notes that neither the Iowa Code nor the Iowa administrative code require an *application* for such a license.

■ The DNR is without doubt responsible for the issuance of resident commercial mussel fishing licenses. Iowa Code § 109B.1(2) (1991). In issuing the license the DNR must enforce compliance with the residency requirements we have mentioned. Administrative agencies do not have inherent powers; they have only those powers that are expressly conferred or necessarily inferred from some power expressly granted. *Northwestern Bell Tel. Co. v. Iowa Utils. Bd.*, 477 N.W.2d 678, 682 (Iowa 1991). We think the power to create an application process is necessarily inferred from DNR's express power to grant licenses. DNR is certainly not in a position to undertake individual investigations of each license applicant. Without the power to create the application

---

1. A third assignment, asserting ineffective assistance of counsel, springs from a claimed failure to preserve error on the first two assignments. Because we find no merit in the two assignments, the ineffectiveness claim is moot, and we give it no further consideration.

process, DNR's licensing ability would be useless. According to a rubric of statutory construction, the legislature will not be presumed to enact a provision that would serve no useful purpose. *Mallory v. Paradise,* 173 N.W.2d 264, 268 (Iowa 1969).

Horton also contends that the charge against him is inconsistent with legislative intent. He notes that a chapter 714 fraudulent practice is a class "D" felony. On the other hand a violation of the license requirement itself is merely a simple misdemeanor. Thus an individual who fishes for mussels with no license at all is guilty of a lesser offense than one who holds a fraudulently obtained license.

The contention misses the mark. Horton is not charged with a fishing violation. Lying on an official document is not to be compared with fishing without a license. The legislature could reasonably conclude that the fraud is the greater wrong.

II. Horton contends the residency requirement of the statute is unconstitutional and urges the unconstitutionality as a defense to the fraudulent practice charge. We need not, and thus do not, decide the constitutionality of the residence requirement. We do however observe that it is highly suspect. *Toomer v. Witsell,* 334 U.S. 385, 395–96, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471 (1948) (privileges and immunities clause—article IV section 2 of the federal Constitution—guarantees that citizens of one state can do business in another state on terms substantially equal to those of local citizens); *Borden v. Selden,* 259 Iowa 808, 813, 146 N.W.2d 306, 310–11 (1966) (same).

Horton's problem, again, is that he is not charged with a fishing violation. Charged with lying to the government, Horton can claim no defense by showing the government had no right to ask the question. The point was perhaps best stated in *Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969). Bryson asserted that his fraudulent answer should be excused because it was in answer to a question that should not have been asked on an analogous constitutional basis—self-incrimination. In rejecting the contention the court said:

> [I]t cannot be thought as a general principle of our law that a citizen has a privilege

to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.

*Id.* at 72, 90 S.Ct. at 360, 24 L.Ed.2d at 271. *See also United States v. Londono,* 553 F.2d 805, 811 (2d Cir.1977).

This rule is in conformance with a broader one. When citizens are wrongly accused of a crime they ordinarily cannot respond in a criminal manner. When they do respond by way of a criminal act, their innocence of the initial charge is no defense to a criminal charge arising from the response. *See Mullican v. United States,* 252 F.2d 398 (5th Cir.1958) (one unlawfully in prison may not resort to the "self-help" remedy of escape, but instead must go through ordinary legal channels). Horton's second assignment is also without merit.

**AFFIRMED.**