**STATE of Iowa, Appellee,**

v.

**Katherine ROHM, Appellant.**

No. 98–1550.

Supreme Court of Iowa.

April 26, 2000.

Derek G. Jones *of* Wells & Wells, P.L.C., Davenport, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, William E. Davis, County Attorney, and Julie Walton, Assistant County Attorney, for appellee.

CADY, Justice.

This is an appeal by a parent who was convicted of the crimes of involuntary manslaughter and supplying alcohol to a minor after a fourteen-year-old boy died from consuming a large quantity of alcoholic liquor during an evening gathering of teens and young adults in the basement of her home. She challenges the sufficiency of evidence to support the convictions and claims the restitution award violates the federal and state constitutions. We affirm the judgment and sentence of the district court.

## I. Background Facts and Proceedings.

The tragic events of this case occurred at the home of Katherine Rohm during the week preceding Christmas 1997. They culminated in the death of Justin Flowers. Justin died from acute alcoholic intoxication. He was a learning disabled freshman in high school, who was on Christmas break.

Rohm lived in a two-story home in Davenport with her two sons, Kevin and Jeffrey Rohm. Rohm was left to raise the boys as a single parent a year earlier when her husband, the boys' father, died. Kevin was twenty years old. Jeffrey was nineteen years of age. A friend, Freddie Duran, also lived in the home at the time. He was twenty-two years of age.

Kevin and Jeffrey decided to host a party on Sunday, December 21 in the basement of the home to celebrate Kevin's upcoming birthday. The boys planned to serve beer and liquor, and charge the guests $5 to attend. This arrangement was done as a means to recoup their expenses for the party. The boys obtained two kegs of beer through a friend, and Jeffrey convinced Rohm to purchase liquor to serve at the party. Rohm initially resisted, but later agreed after Jeffrey persuaded her he would simply find another means to obtain liquor if she refused to purchase it. Jeffrey gave Rohm $80 to purchase a variety of liquor, including vodka, gin, and a grain alcohol called Everclear, which she did. Everclear is 190–proof grain alcohol.[1] It contains ninety-five percent alcohol.

---

1. Grain alcohol is also known as ethanol. *See McKnight v. State*, 658 N.E.2d 559, 560 (Ind. 1995). In Iowa, ethanol is regulated, not as an intoxicant, but rather as a fuel additive. *See* Iowa Code §§ 452A.2(2) (defining gasoline "blender"), .85(1) (tax on blended gasoline). Aside from its use as an intoxicant, grain alcohol has also been used in a multitude of criminal activities. *See People v. Rogers*, 222 Ill.App.3d 774, 165 Ill.Dec. 218, 584 N.E.2d 397, 398 (1991) (poured on skin and ignited, grain alcohol burned for over ten minutes and caused major burns to the skin); *People v. Ortiz*, 207 Ill.App.3d 1, 151 Ill.Dec. 957, 565 N.E.2d 228, 230 (1990) (grain alcohol used to clean bullets); *People v. Rouser*, 199 Ill.App.3d 1062, 145 Ill.Dec. 949, 557 N.E.2d 928, 930 (1990) (grain alcohol used for free-basing cocaine); *State v. Withrow*, 8 S.W.3d 75, 77 (Mo.1999) (grain alcohol used to manufacture methamphetamine). And while one court has found the risk of death associated with ingesting Everclear too common of knowledge to require a warning from the manufacturer, bottles of Everclear include a warning label. *Compare Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 693 (Tenn.1984) (no warning necessary), *with Brune v. Brown Forman Corp.*, 758 S.W.2d 827, 830 (Tex.Ct.App. 1988) (warning labels affixed).

The basement of the Rohm home was not finished. It was accessible by steps which descended from a landing just inside a side door to the outside of the house. There was also a step or two which led from the landing to the kitchen on the first floor of the home. The basement was furnished with two sofas, some chairs, and a table, television, and refrigerator. It also had a bathroom, and a makeshift bedroom enclosed by sheets which hung from the ceiling. It was common for Kevin and Jeffrey to congregate with friends in the basement and drink beer. Rohm worked outside the home.

Word of the impending party spread among the network of friends during the week preceding the event, and people began to arrive at the house on Sunday afternoon. Most of the guests entered the side door, and nearly all of them were under twenty-one years of age. Most were in high school, between fifteen and seventeen years old. By evening, the party was in full swing. Rohm was at home during the time, and occasionally refused to permit guests to enter the house because of the large crowd that had assembled in the basement. She also occasionally complained to the crowd about the high level of noise. At one point during the evening, however, she left the home to purchase another bottle of Everclear after requested to do so by Jeffrey.

As the party progressed during the evening, many guests began to vomit and pass out. Jeffrey had prepared a punch which contained several types of liquors, including Everclear. After the party eventually came to an end, a number of the guests remained in the basement until morning in various states of repose.

The following day, friends again began to congregate in the basement of the Rohm home to watch football and play video games. Like the previous evening, Rohm was in the home. The liquor which remained from the party the night before remained in the basement, as well as the kegs of beer. Numerous bottles of liquor,

including a bottle of Everclear, had been placed in the basement refrigerator. Rohm, at one point, removed a bottle of gin from the refrigerator after telling her sons and their friends who had gathered in the basement at the time that she did not want them to consume the liquor. She took the bottle of gin upstairs.

Justin Flowers arrived at the home on Monday evening around 7:30 p.m. with Freddie Duran. There were less than a dozen people in the basement at the time. Justin requested a drink and announced he wanted to become intoxicated. Jeffrey mixed orange juice, vodka, gin, and Everclear into a large plastic cup and handed it to Justin. Justin began to consume the drink. A short time later, Jeffrey told Justin he would pay him $10 if he could drink the remaining grain alcohol in the Everclear bottle. The bottle was approximately one-third full. Justin accepted the challenge and promptly chugged the contents of the bottle.

Within a short period of time, Justin's walk and speech became impaired. He went upstairs for several minutes, before he returned to the basement and resumed drinking the concoction Jeffrey had prepared for him earlier. However, he was unaware that Jeffrey, and perhaps others in the basement, had added urine and additional liquor to the plastic cup while he was in the upstairs area of the house.

Shortly after drinking this new concoction, Justin began to vomit. He fell to the floor near one of the sofas and began to convulse before becoming motionless. While Justin remained in a comatose state, he became the target of a variety of crude acts. Jeffrey, and others, placed dog feces in his pants, stripped off his shirt, placed a cigarette in his ear, and put several household items and a sign on his body. Freddie also kicked him several times.

For the most part, the people in the basement believed that Justin had passed out, although some felt he did not look good. Nevertheless, the general social ac-

tivities of the evening continued to take place around his motionless body as other guests would come and go. Only a modest amount of drinking took place, although guests participated in smoking marijuana before the evening came to an end. There were no large crowds in the basement like the night before, although Rohm complained of loud noise at one point.

Around 9:30 a.m. the next morning, Freddie attempted to awaken Justin. There was, however, no life in Justin to rouse. He had died sometime during the evening. His skin was cold and damp, and he had no pulse. Freddie and Jeffrey called 911, but not before removing the liquor bottles and kegs from the house, and engaging in a vain attempt to clean the basement.

The paramedics who responded to the 911 call found Justin on the basement floor when they arrived. He was lifeless and shirtless. A circular burn was observed on his back. Rigor mortis had set in to his joints. A pungent odor of feces, alcohol, vomit, and a cleaning agent permeated throughout the basement. A subsequent test revealed Justin's blood contained an alcohol level of .412. An autopsy concluded he died from alcohol poisoning.

Rohm was charged with involuntary manslaughter and supplying alcohol to a minor resulting in death. Jeffrey, Kevin, and Freddie were also charged with crimes.

Following a trial, a jury found Rohm guilty of involuntary manslaughter in violation of Iowa Code section 707.5(1) (1997) and supplying alcohol to a minor in violation of section 123.47(6) (Supp.1997). The district court merged the two offenses and sentenced Rohm to an indeterminate sentence not to exceed five years. It also ordered a civil restitution award of $150,-000 pursuant to section 910.3B(1) (Supp. 1997).

Rohm appeals. She claims there was insufficient evidence to support her conviction. She also challenges the victim restitution award on constitutional grounds.

## II. Scope of Review.

■■■■ We review challenges to the sufficiency of the evidence for errors at law. Iowa R.App. P. 4; *State v. Pace*, 602 N.W.2d 764, 768 (Iowa 1999). We uphold a finding of guilt if "substantial evidence" supports the verdict. *Pace*, 602 N.W.2d at 768. "Substantial evidence" is evidence upon which a rational finder of fact could find a defendant guilty beyond a reasonable doubt. *Id.* We review the facts in the light most favorable to the State. *Id.* Furthermore, we consider not only evidence which supports the verdict, but all reasonable inferences which could be derived from the evidence. *Id.*

■■ We review a challenge to jury instructions for errors at law. Iowa R.App. P. 4; *Sheets v. Ritt, Ritt & Ritt*, 581 N.W.2d 602, 604 (Iowa 1998). We review constitutional issues de novo. *State v. Hamrick*, 595 N.W.2d 492, 493 (Iowa 1999).

## III. Involuntary Manslaughter.

Involuntary manslaughter is committed when a person "unintentionally causes the death of another" by recklessly committing either "a public offense, other than a forcible felony or escape," or an act "likely to cause death or serious injury." *See* Iowa Code § 707.5(1), (2) (1997). In this case, Rohm was charged under the commission of a public offense alternative of the crime.[2] The underlying public offense was contributing to the delinquency of a minor under section 709A.1. Contributing to the delinquency of a minor means "knowingly encourag[ing], contribut[ing] or in any manner caus[ing a child under eighteen years] of age to violate any law of this state . . . ." *Id.* § 709A.1(3) (1997). The

---

**2.** The first prong of involuntary manslaughter is a class "D" felony. *See* Iowa Code § 707.5(1) (1997). The second prong is an aggravated misdemeanor. *See id.* § 707.5(2).

law in this state prohibits a person under the age of eighteen to possess alcoholic liquor, wine, or beer. *Id.* § 123.47(2), (3) (Supp.1997).[3]

## A. Sufficiency of Evidence.

■ The marshaling instructions to the jury in this case required the State to prove Rohm "knowingly and recklessly encouraged a child under eighteen years of age to commit a delinquent act, *i.e.*, consumption of beer, wine, or liquor." Rohm claims there was insufficient evidence to support a finding that she "knowingly encouraged" Justin to consume liquor.

■ The statute does not define the word "encourage." Nevertheless, when a word has no legislative definition or some particular meaning in the law, we assume the legislature intended it to have its common and ordinary meaning. *State v. White,* 545 N.W.2d 552, 555–56 (Iowa 1996).

Encourage is commonly defined to mean "to inspire with courage, spirit, or hope; to spur on; to give help or patronage." Merriam–Webster's Collegiate Dictionary 381 (10th ed.1998). Furthermore, we use the word "encourage" to help define the theory of aiding and abetting. Aiding and abetting not only means to actively participate in a crime, but includes conduct which "encourages" the crime in some manner. *State v. McClelland,* 162 N.W.2d 457, 464 (Iowa 1968). Thus, we have held that encouragement does not require presence at the scene of the illegal activity. *Id.* Instead, all of the surrounding circumstances, including conduct before and after the offense, are considered. *See id.; State v. Marsan,* 221 N.W.2d 278, 280 (Iowa 1974).

Rohm acknowledges the evidence that she purchased the liquor for the party held on Sunday night, but claims the circumstances of the following day preclude a finding that she encouraged Justin to consume liquor on Monday night. She asserts encouragement cannot be found when she was absent from the basement throughout the time Justin consumed liquor, had no knowledge of the particular circumstances or manner in which Justin consumed the liquor, verbally disapproved of further consumption of liquor, and gave instructions on Monday night as guests began to gather in the basement that the remaining liquor could not be consumed.

We agree with Rohm that the party on Sunday was separated in time from the subsequent gathering in the basement on Monday night. We also agree that her role in the second party was diminished by the passage of time. However, there is one critical factor which inescapably ties Rohm to both events despite the passage of time.

A portion of the liquor she purchased for the party on Sunday and which she permitted to be freely consumed during the party remained in the basement on Monday as guests again arrived at the house. Rohm knew this liquor remained in the basement and knew young people were again gathering in the basement. There was also evidence that would have permitted the jury to conclude Rohm knew the consumption of liquor had resumed. Guests arrived at the house and left throughout the evening, and Rohm even complained of loud noise. Furthermore, Justin went upstairs for a period of time after he had consumed large quantities of alcohol and after he was exhibiting obvious signs of intoxication.

Although Rohm may have verbally disapproved of the further consumption of the liquor on Monday evening, the jury could

---

**3.** The law also prohibits any person under the age of twenty-one from purchasing or possessing liquor, wine or beer, except minors can possess alcohol in the privacy of their own home if their parent or guardian knowingly gives them alcohol, approves of its con-

sumption, and is present at the time. *See* Iowa Code § 123.47(2) (Supp.1997). Additionally, persons under twenty-one may ingest alcohol for medicinal purposes under the orders of a doctor, or may handle alcohol in the course of their employment. *See id.*

have found she nevertheless encouraged the consumption of liquor on Monday by permitting the beer and liquor to remain in the basement under the control of her sons with knowledge that young people prone to engage in the consumption of liquor were again gathering in the basement.

■ Evidence of encouragement is not only derived from spoken words, but may be derived from actions and conduct which constitute encouragement.[4] Moreover, by using all surrounding circumstances to determine whether encouragement exists, the actions of a person may give rise to substantial evidence of encouragement when words may not. The circumstances of this case reveal Rohm encouraged Justin to possess liquor in violation of the law through her actions in purchasing liquor and permitting the liquor to remain in the possession of her sons in an area of the house she knew would be occupied by underaged persons prone to consume the liquor. *See United States v. Oloyede*, 982 F.2d 133, 136–37 (4th Cir.1992) (selling fraudulent documents and immigration papers was "encouraging" aliens to reside in the United States in violation of the law). The conduct of Rohm was consistent with the consumption of liquor in the basement of the Rohm home by the Rohm boys and their friends. We conclude there was substantial evidence Rohm encouraged Justin to consume liquor.

### B. Recklessness.

■ One essential element of involuntary manslaughter is that the underlying offense or act be committed in a reckless manner. *State v. Conner*, 292 N.W.2d 682, 686 (Iowa 1980); *State v. Inger*, 292 N.W.2d 119, 123 (Iowa 1980). This element existed at common law and has been preserved by our legislature in the subse-

quent statutory crime of involuntary manslaughter. *Conner*, 292 N.W.2d at 686.

■ Recklessness is conduct that shows a willful or wanton disregard for the safety of others. *State v. Ayers*, 478 N.W.2d 606, 608 (Iowa 1991). It is ordinarily conscious and intentional, and involves an unreasonable risk of harm to others which is or should be known to the offender. *State v. Kernes*, 262 N.W.2d 602, 605 (Iowa 1978).

■ Rohm claims that even if she may have encouraged Justin to possess or consume liquor, there was insufficient evidence to show her encouragement was reckless in light of her subsequent efforts to prevent the consumption of liquor.

. Although encouragement and recklessness were separate issues for the jury under the instructions, much of the evidence we considered to find substantial evidence of encouragement also supports a finding of recklessness. Additionally, Rohm not only purchased a large quantity of liquor containing high contents of alcohol, but also purchased 190–proof grain alcohol. Considering all of the circumstances, we find substantial evidence Rohm acted in a reckless manner.

### IV. Supplying Alcohol to a Minor.

■ A person who is of legal age and is not a licensee or permitee commits a serious misdemeanor if the person "sells, gives or otherwise supplies alcoholic liquor, wine, or beer" to an underaged person. Iowa Code § 123.47(4) (Supp.1997). The crime is elevated to an aggravated misdemeanor if the violation results in serious injury to any person. *Id.* § 123.47(5). It is further elevated into a class "D" felony if the violation results in the death of any person. *Id.* § 123.47(6). Rohm claims there was insufficient evidence that she sold, gave, or otherwise supplied Justin with liquor. She asserts there was no

---

**4.** It is a familiar truth that "actions speak louder than words." The earliest written source of this ancient American proverb was in 1628. *See* A Dictionary of American Prov-

erbs, 7 (Wolfgang Miedler eds., 1992) (citing Plym, *Debate on Message From Charles I*, 1628 as the first publication of the phrase).

evidence to show she affirmatively delivered the liquor to Justin.

■ The statutory crime of supplying alcohol to a minor requires a person to affirmatively deliver or transfer liquor, wine, or beer to the underaged person. *See DeMore v. Dieters*, 334 N.W.2d 734, 737 (Iowa 1983). This means that a violator must do more than merely permit or allow liquor, wine, or beer to be consumed on the violator's premises. *Id.; see also Fullmer v. Tague*, 500 N.W.2d 432, 434 (Iowa 1993).

In *Fullmer*, we found a parent did not knowingly and affirmatively deliver beer to minors when she had no knowledge that her son used her check to purchase beer for a party, no knowledge of the party or any underaged drinking, and was not present at the party. *Fullmer*, 500 N.W.2d at 435. In contrast, there was substantial evidence in this case to show Rohm purchased the liquor and delivered it to her sons to be consumed by underaged persons at a party in the basement of her home. Rohm knew liquor remained in the basement the day following the party, and was present in the home when guests again gathered in the basement the following evening. There is also evidence to suggest Rohm knew the liquor was being consumed by underaged guests, including Justin. Under these circumstances, we find Rohm did more than merely permit liquor to be consumed. She knowingly and affirmatively delivered liquor to minors, including Justin.

■ Rohm also claims the trial court erred in failing to include recklessness as an element of the offense of supplying alcohol to a minor. Rohm argues recklessness must be included as an element of the felony offense of supplying alcohol to a minor because the offense is a particularized version of the crime of involuntary manslaughter.

■ Our legislature has wide latitude to declare an offense and define the appropriate element of criminal intent or culpable conduct. *See State v. Wharff*, 257 Iowa 871, 875, 134 N.W.2d 922, 925 (1965). To determine the type of culpability required by a statutory offense, we construe the statute by considering the language of the act, in connection with its manifest purpose and design. *See Conner*, 292 N.W.2d at 685. The statute in dispute provides:

A person who is of legal age, other than a licensee or permitee, who sells, gives, or otherwise supplies alcoholic liquor, wine, or beer to a person who is under the legal age in violation of this section which results in the death of any person commits a class "D" felony.

Iowa Code § 123.47(6) (Supp.1997).

There is no language in section 123.47(6) which discloses any legislative intent to impose recklessness as an element of the crime. The language of the statute does not contain the word recklessness or any similar indication of culpability, but is confined to the act of supplying alcoholic beverage to an under-aged person which results in the death of any person. *Id.* Nevertheless, we have on previous occasions construed statutes to include a criminal intent element which was absent from its face when supported by the manifest purpose and design of the statute. *Conner*, 292 N.W.2d at 685.

We acknowledge the crime of involuntary manslaughter and the felony crime of supplying alcohol to a minor are compatible when the underlying public offense of involuntary manslaughter is supplying alcohol to a minor. The trial court also understood this when it applied the merger doctrine for the two crimes. We also acknowledge recklessness is an element of the crime of involuntary manslaughter. *See id.* at 686. However, the identity of the two statutory crimes does not necessarily mean that recklessness must be an element of the felony offense of supplying alcohol to a minor.

We determined that our legislature intended to include the common law element

of recklessness in the statutory crime of involuntary manslaughter as a means to exclude negligent conduct. *Id.* at 686–88. The purpose and design of the involuntary manslaughter statute was not to impose its harsh penalty for negligent conduct which results in death, but to punish a public offense committed in a reckless manner. *Id.* at 688. Although the language of our involuntary manslaughter statute applies to the commission of any public offense, except a forcible felony or escape, the recklessness element serves to exclude the commission of a public offense by those who were not conscious of the grave risks of their conduct. *Id.* at 687.

Unlike the crime of involuntary manslaughter, the language of the statutory crime of supplying alcohol to a minor which results in death does not apply to a broad range of general activity which requires an element to separate negligence from recklessness. The statute is designed to target the specific conduct of supplying alcohol to a minor. Thus, a recklessness element is not necessary to exclude other conduct not intended to be included.

Our concern, then, turns to whether the two statutes create two standards of conduct which are applicable to supplying alcohol to a minor resulting in the death of a person. *See Kernes,* 262 N.W.2d at 605 (absent a controlling statute, there should be one standard of conduct applicable to involuntary manslaughter cases).

We do not believe our legislature created two standards of conduct applicable to the activity of supplying alcohol to a minor which results in death. Although recklessness ordinarily involves a factual inquiry, some conduct itself may constitute recklessness. *Id.* at 605–06. This is because the very nature of some activities are considered reckless due to the known, dangerous risks involved. *Id.; see also State v. Massick,* 511 N.W.2d 384, 387 (Iowa 1994) (drunk driving is a reckless act in itself); *State v. Wullner,* 401 N.W.2d 214, 217 (Iowa App.1986) (it would be "patently absurd and generally redundant" for the State to have to show drunk driving was reckless). Thus, when the activity or conduct itself constitutes recklessness, the necessity of proof of recklessness is eliminated. The known and grave risks associated with the consumption of alcohol by minors would clearly justify our legislature in creating a statute which eliminates proof of recklessness for the crime of supplying alcohol to a minor which results in death.[5]

There is another reason that discloses our legislature intended to eliminate proof of recklessness under section 123.47(6). The statute was enacted in 1997. *See* 1997 Iowa Acts ch. 126, § 2. Yet, at the time of its enactment, supplying alcohol to a minor was a public offense. Thus, the offense of supplying alcohol to a minor would have constituted an underlying public offense under the involuntary manslaughter statute. If the legislature intended recklessness to be an element of both statutes, section 123.47(6) would serve no useful purpose since the same conduct already fell within the involuntary manslaughter statute. We presume our legislature would not enact a statute which would serve no useful purpose. *State v. Horton,* 509 N.W.2d 452, 454 (Iowa 1993).

We conclude the district court properly instructed the jury on the elements of supplying alcohol to a minor which results

5. Minors are ill-equipped to handle the effects of alcohol in their system, and merely providing it to them sets the stage for potentially fatal results. For example, in 1998, fourteen percent of drivers age 16–20 involved in fatal car accidents had a blood alcohol concentration of 0.10 percent or greater despite the minimum legal drinking age of twenty-one. *See* Nat'l Highway Safety Admin., U.S. Dep't of Transp., Traffic Safety Facts—Alcohol, tbl. 3 ("Alcohol Involvement for Drivers in Fatal Crashes, 1988 and 1998") (1998). Additionally, over one-third (34%) of nonoccupant fatalities (pedestrians) from the same age group killed in accidents involving vehicles were legally intoxicated. *See id.* tbl. 5 ("Alcohol Involvement for Nonoccupants Killed in Fatal Crashes, 1988 and 1998").

in death under section 123.47(6). We believe our legislature intended to eliminate proof of recklessness as an element of the crime.

## V. Restitution Award: Iowa Code section 910.3B.

In addition to the five-year indeterminate sentence and pecuniary damage restitution award, the district court entered an additional restitution award payable to Flowers' estate in the amount of $150,000 pursuant to section 910.3B. *See* Iowa Code § 910.3B(1) (Supp.1997). Rohm argues the imposition of this additional restitution award violates her constitutional right against excessive fines. She also challenges the statute on due process grounds based upon her inability to challenge the amount of the award.

### A. Excessive Fine.

■ Rohm argues the award pursuant to section 910.3B, on its face, violates the federal and Iowa constitutions' guarantees against excessive fines. *See* U.S. Const. amend. VIII; Iowa Const. art. I, § 17. We have recently addressed this issue in *State v. Izzolena*, 609 N.W.2d 541, 547–48 (Iowa 2000). For the same reasons found in that decision we find the award under section 910.3B does not constitute an excessive fine.

■ Rohm also argues the statute, when applied to the facts of her case, violates her right to be free of excessive fines. She claims the award is grossly disproportionate to her conduct. We recently addressed this very issue in *State v. Klawonn*, 609 N.W.2d 515, 518 (Iowa 2000); however due to the fact-specific nature of the analysis, we will address it separately here.

Rohm contends the gravity of the offense was diminished because her conduct was passive and she lacked any intent to cause harm. She also asserts her limited financial means should be considered in determining whether the minimum amount of the restitution under the statute is excessive.

We have already addressed the seriousness of the conduct engaged in by Rohm. Although her conduct was passive in the sense that she did not participate in the consumption of liquor with the minors, she was the source or supplier of the liquor. She supplied large amounts of liquor, some with very high levels of alcohol. There was also evidence to support a finding she knew the liquor was being consumed. Whether passive or active, her conduct was extremely serious under the circumstances of the case.

We addressed the impact of the financial burden on the offender as it relates to the amount of the penalty in *Klawonn. See Klawonn*, 609 N.W.2d at 518. For the reasons expressed in our opinion in *Klawonn*, we conclude the financial burden visited upon Rohm would not make the restitution award grossly disproportionate to the offense.

### B. Due Process.

■ Rohm argues section 910.3B violates the basic tenets of due process by failing to provide a procedure to challenge the imposition or the amount of the award. We recently decided in *Izzolena* that section 910.3B does not constitute a violation of procedural due process. *See Izzolena*, 609 N.W.2d at 546. For the same reasoning found in that decision we find section 910.3B does not violate Rohm's due process rights.[6]

### VI. Conclusion.

We find substantial evidence in the record to support the district court's entry of judgment against Rohm on the charges of involuntary manslaughter and providing alcohol to a minor. Additionally, we hold the award pursuant to section 910.3B does not constitute an excessive fine, nor violate due process guarantees. Accordingly, we affirm the district court's judgment and sentence

**AFFIRMED.**

---

6. Although not raised by the parties to this action, in *Klawonn*, 609 N.W.2d at 517, we additionally determined section 910.3B does not constitute a violation of substantive due process.

All justices concur except SNELL, J., who concurs in part and dissents in part, and TERNUS and LAVORATO, JJ., who dissent, and CARTER, J., who takes no part.

SNELL, Justice (concurring in part and dissenting in part).

I concur in the majority's opinion which affirms the convictions but dissent from the opinion regarding the $150,000 restitution order for the reasons stated by Justice Lavorato in *State v. Izzolena*, 609 N.W.2d 541 (Iowa 2000). I would vacate that order and remand so that the district court could then determine the amount of restitution in a meaningful hearing.

TERNUS, Justice (dissenting).

I would reverse the defendant's convictions because there was not substantial evidence that the defendant encouraged Justin Flowers to possess alcohol, or affirmatively delivered or transferred alcohol to him. There was no evidence in the record that defendant knew Flowers was consuming alcohol, or that she saw him in an intoxicated state when he went upstairs. I do not believe that the defendant's passive conduct—allowing alcohol to remain accessible to minors—constitutes encouragement or an affirmative delivery so as to render the defendant criminally responsible for Flowers' death.

LAVORATO, J., joins this dissent.