# IN THE COURT OF APPEALS OF IOWA

No. 15-1123
Filed September 14, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JESHUA DAVID DIVIS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Gregory W.

Steensland, Judge.


        A defendant appeals his conviction for robbery in the second degree.

**REVERSED AND REMANDED FOR NEW TRIAL.**


        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kristin A. Guddall and Kevin R.

Cmelik, Assistant Attorneys General, for appellee.


        Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

A jury convicted Jeshua Divis of robbery in the second degree based on evidence he approached a female patron at a Council Bluffs casino, displayed a syringe, and showed her a message on his cell phone instructing her to give up her winnings or he would inject her with an unnamed substance. On appeal, Divis contests the sufficiency of the State's proof of the assault or threat element of robbery. He also challenges the jury's exposure to a second threatening note and surveillance footage from a second casino where he was arrested eleven hours later. Divis argues the district court abused its discretion under Iowa Rule of Evidence 5.403 in admitting that evidence. Finally, he contends his attorneys were ineffective in not seeking exclusion under rule 5.404(b) or moving to suppress the evidence as the fruit of an illegal search.

Viewing the evidence in the light most favorable to the State, we find substantial evidence to support the jury's verdict. But because the probative value of the second note and video was substantially outweighed by the danger of unfair prejudice and counsel was ineffective in not arguing for exclusion under rule 5.404(b), we reverse the robbery conviction and remand for a new trial excluding that evidence. Given the reversal on evidentiary grounds, we decline to reach Divis's ineffective-assistance claim concerning counsel's failure to file a motion to suppress alleging an illegal search and seizure.

## I. Facts and Prior Proceedings

For entertainment on Black Friday morning, Cassandra Stever and her mother decided to gamble at Ameristar Casino in Council Bluffs. After some

initial success on the slot machines, Stever's luck soured, and she moved to a different bank of machines away from the spot where her mother was playing.

At her new location, a man later identified as Divis sat down next to Stever. She expected him to engage in "small talk," but he instead held out a hat revealing a syringe inside. Stever could tell the plunger was pulled back, but she could not see the needle portion or the contents of the syringe. Divis then held out his cell phone and asked Stever to read the screen. Stever recalled: "[I]t stated that if I did not give him my money that he will inject me." The electronic message also stated "there were four other guys walking around the casino doing the same thing."

Stever told Divis she did not have any money and pulled out her wallet to show him it was empty. She then started to walk toward her mother's location. Divis initially followed her, but when she turned to the right, he turned to the left. Stever notified a slot attendant about the encounter and reported it to investigators. Investigators recalled Stever was "visibly upset" and "pretty shaken up" by the experience. Based on Stever's description and surveillance tapes from the Ameristar Casino, investigators located Divis about ten hours later, just before 10:00 p.m., at the Horseshoe Casino, which is also in Council Bluffs.

Video surveillance at the Horseshoe Casino showed Divis "sitting at a slot machine, not facing the slot machine but facing out like he was looking at other people." When the video cameras zoomed in, Divis could be seen holding a piece of paper bearing a handwritten note. Detective Richard Stehly approached Divis and removed the note from his hand. That note stated:

In my hand, as well as my companions, is a needle with our H.I.V. infected Blood. Print your Ticket and Hand it to me. <u>THIS IS NOT GAME</u>!! Tell no one. If you fail to comply, one poke from anyone of us and we'll change UR life. We have nothing to Lose!! You've only seen me.

Authorities arrested Divis that night. The State initially charged Divis with robbery in the first degree but later amended the trial information to charge robbery in the second degree, in violation of Iowa Code section 711.3 (2013). Before trial, the defense filed a motion in limine seeking to exclude a pellet gun, knife, and the threatening note found on Divis when he was detained at the Horseshoe Casino. The prosecution agreed not to offer evidence concerning the pellet gun and knife but argued for the admissibility of the note. In a second motion in limine, the defense sought to exclude the note and the Horseshoe Casino surveillance video. The district court found that evidence admissible under rules 5.402 and 5.403. The jury returned a verdict finding Divis guilty of robbery in the second degree.

After trial, the court appointed a different defense attorney, who filed a motion for new trial for Divis. The motion argued: "Previous defense counsel should have filed a motion to suppress the note, syringe, and other material illegally obtained by law enforcement at the Horseshoe Casino." The court denied the new-trial motion and sentenced Divis to an indeterminate ten-year prison term with a seventy-percent mandatory minimum. Divis now appeals.

## II.    Scope and Standards of Review

The issues raised by Divis call for three different standards of review. First, we review his challenge to the sufficiency of the evidence for legal error. *See* Iowa R. App. P. 6.907; *see also State v. Rohm*, 609 N.W.2d 504, 509 (Iowa

2000). We uphold the jury's verdict if it is supported by "substantial evidence." *Id.* (quoting *State v. Pace*, 602 N.W.2d 764, 768 (Iowa 1999)). The word "substantial" describes evidence from which a reasonable fact finder could determine a defendant's guilt beyond a reasonable doubt. *Id.* We review the facts in the light most favorable to the verdict and consider not only evidence bolstering the verdict, "but all reasonable inferences which could be derived from the evidence." *Id.*

Second, we review his challenge to the district court's ruling on the admissibility of evidence under rule 5.403 for an abuse of discretion. *See State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013).

Third, to the extent we address his claims of ineffective assistance of counsel, our review is de novo because of the constitutional implications. *See State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

**III. Analysis**

**A. Sufficiency of the Evidence**

In his first assignment of error, Divis contends the district court should have granted his motion for judgment of acquittal because the State's evidence did not satisfy all the elements of robbery in the second degree. Those elements were spelled out in the jury's marshalling instruction. The State was required to prove:

> 1. On or about the 28th day of November 2014, [Divis] had the specific intent to commit a theft.
> 2. In carrying out his intention or to assist him in escaping from the scene, with or without the stolen property, [Divis] committed an assault on Cassandra Stever or threatened [her] with or purposely placed [her] in fear of immediate serious injury.

The jury instructions defined assault as an act "meant to place another in fear of immediate physical contact which will be painful, injurious, insulting or offensive when coupled with the apparent ability to do the act" and defined "apparent ability" as meaning "a reasonable person in [Divis's] position would expect the act to be completed under the existing facts and circumstances." *See* Iowa Code § 708.1(2).

Divis claims the State's evidence was insufficient to show he had the apparent ability to commit the assaultive act. He reasons that because his threat was to inject Stever with the syringe he displayed and Stever never saw a needle or any substance inside the syringe, the State did not prove his ability to execute the assault. He also points out the syringe seized from him at the Horseshoe Casino and offered as an exhibit at trial did not include a needle or injectible substance. Accordingly, Divis contends the State failed to prove he would have reasonably expected to complete the act of injecting Stever.

The State counters the act at issue here was Divis placing Stever in fear of offensive contact, not the actual contact itself. *See id.* § 708.1.[1] Divis accomplished his goal, according to the State, when he showed Stever the syringe with the plunger pulled back—followed with the electronic note threatening to inject her if she did not give him money.

---

[1] The first two alternatives under section 708.1(2) require different overt acts. Subsection (a) reflects the common law crime of battery, an act intended to result in painful physical contact. *See State v. Yanda*, 146 N.W.2d 255, 255 (Iowa 1966). Subsection (b) reflects the common law crime of assault, a more preliminary act intended to place another in fear of immediate physical contact. *See id.* at 256 (describing an assault as "the initial stage of an act which is aggravated by a battery").

We agree with the State's position. Under section 708.1(2), the ability to complete the act must be apparent to the actor, or in other words "his expectations of placing another in fear . . . must be reasonable." *See State v. Braggs*, 784 N.W.2d 31, 37 (Iowa 2010) (quoting *State v. Jackson*, 305 N.W.2d 420, 423 (Iowa 1981), *overruled on other grounds by State v. Lyman*, 776 N.W.2d 865, 873 (Iowa 2010)). Substantial evidence supported the jury's conclusion Divis had a reasonable expectation he would place Stever in fear of offensive physical contact when he displayed the syringe and electronic note threatening to inject her if she did not comply with his demand for cash.

Divis next argues the State failed to present sufficient evidence he threatened Stever with or purposely placed her in fear of *immediate serious injury*. The jury instructions defined serious injury as "a bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ." Divis points out Stever did not know what substance was supposed to be in the syringe. He emphasizes that unlike the note seized from Divis at the Horseshoe Casino, the message on his cell phone at the Ameristar Casino did not inform Stever the syringe contained blood infected with human immunodeficiency virus (HIV).

Even without the more specific warning contained in the handwritten note, the jury could have reasonably inferred from the context of Divis's encounter with Stever that he threatened her with or purposely placed her in fear of immediate serious injury. *See State v. Losey*, No. 05-1745, 2006 WL 3802925, at *3 (Iowa Ct. App. Dec. 28, 2006) (affirming conviction for second-degree robbery based

on defendant's "demeanor, proximity to the bank teller, his note demanding money, as well as the teller's resulting fear, when considered in total"). Stever testified she did not know Divis, yet he approached her at the casino, showed her the syringe, and demanded her winnings. He called her a liar when she denied having any money, telling her he had been watching her play the slots. He added to the menacing nature of the threat by suggesting he had four accomplices walking around the casino "doing the same thing." The threat of being injected, even with an unnamed substance, would reasonably provoke fear of serious harm. And while not dispositive, Stever testified she feared for her life and appeared upset when reporting the encounter with Divis. We find substantial evidence supported the jury's verdict, viewing it in the light most favorable to the State.

## B. Defense Motions in Limine

In his first motion in limine, Divis sought to exclude the handwritten note he was holding at the Horseshoe Casino. He reasoned the note was irrelevant because it was not used in the robbery incident charged. Divis further argued the note was "overly prejudicial" because it contained a different threat than Stever saw on his cell phone. Divis filed an additional motion in limine two days later, seeking to exclude the surveillance video showing him holding the note.

At the motion hearing, defense counsel argued the handwritten note was "much more threatening" and highlighted the "most objectionable part" as the reference to HIV-infected blood. The trial prosecutor argued under rule 5.403, the note was admissible because it did not confuse the issues or mislead the jury. The prosecutor further argued the note was probative because "number

one, we have a reasonable inference that the defendant used the note to type his message, his demand, on the phone that he was carrying. Number two, it goes to establish the victim's credibility and corroborates her testimony." The prosecutor argued the video was admissible to help identify Divis. The district court orally denied the defense request to exclude the handwritten note and Horseshoe Casino video—citing rules 5.402 and 5.403.

Divis now argues the district court abused its discretion in allowing the handwritten note and Horseshoe Casino video into evidence because it was "irrelevant to what transpired at Ameristar." Divis emphasizes the video was recorded and the note was seized ten hours later at a different location. Moreover, the handwritten note differed substantially from the cell phone message Divis showed Stever. Divis further argues the prejudicial effect of this evidence substantially outweighed any minimal probative value. Divis focuses on the reference to HIV-infected blood as creating a "much more ominous threat" than that actually conveyed to Stever.

Divis also contends his trial counsel was ineffective for not arguing the note and video were inadmissible as other-bad-acts evidence under rule 5.404(b). *See State v. Sullivan*, 679 N.W.2d 19, 24–25 (Iowa 2004) (recognizing rule 5.404(b) as a rule of exclusion). To prevail on his claim of ineffective assistance of counsel, Divis must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984); *State v. Shanahan*, 712 N.W.2d 121, 136 (Iowa 2006) (analyzing claim trial counsel failed to object to other-bad-acts evidence).

We begin with the question of relevance. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. "All relevant evidence is admissible" except as provided by another rule, statute, or constitutional provision. Iowa R. Evid. 5.402.

On appeal, the State is less enthusiastic about the relevance argument advanced by the trial prosecutor, namely, that Divis used the handwritten note to type the threatening message into his phone, saying only that Ameristar Casino footage appeared to show Divis using his phone so it was "possible to conclude he was composing the message, potentially with the aid of the written note." Neither at trial nor on appeal does the State assert why Divis's composition process is a fact of consequence to the determination of the robbery prosecution. We do not see the handwritten note as relevant on this basis.

In its appellate brief, the State gives a more full-throated pitch for the probative value of the Horseshoe Casino video and handwritten note to prove Divis's identity, plan or scheme, intent, and motive. The State characterizes Divis's robbery scheme as "unique" and suggests being found in another casino on the same day engaging in the same behavior proves his identity as the perpetrator. The State argues the Horseshoe Casino video corroborates Stever's description of Divis and his conduct. The State further contends the disputed evidence completes the story of the crime.

The force of the State's argument concerning the probative value of the disputed evidence runs up against Divis's complaint that his trial counsel was remiss in not invoking rule 5.404(b). That rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Iowa R. Evid. 5.404(b). The policy behind excluding evidence of other crimes, wrongs, or acts is not that the evidence is irrelevant but that a jury would be tempted to give excessive weight to that evidence. *See State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010).

Iowa courts ask two questions to decide whether other-bad-acts evidence is admissible. *Sullivan*, 679 N.W.2d at 25. First, did the State, as the offering party, prove the evidence was relevant to a legitimate factual issue in dispute? *Id.* If so, the court then considers the query under rule 5.403: is the probative value of the evidence substantially outweighed by the danger of unfair prejudice to the defendant? *Id.*

Because trial counsel did not raise an objection under rule 5.404(b), the district court did not hold the prosecution to its burden of articulating "a valid, noncharacter theory of admissibility." *See State v. Richards*, 879 N.W.2d 140, 148 (Iowa 2016) (quoting *Sullivan*, 679 N.W.2d at 28). A noncharacter theory of admissibility is only valid if the issue is legitimately disputed. *Id.* Here, the trial prosecutor argued the note and video were admissible (1) to prove Divis may have used the handwritten note to type a message into his cell phone and (2) to bolster Stever's credibility. As discussed previously, because Divis's method of

composition was not a disputed issue, that theory of admissibility was not a valid reason for placing the content of the handwritten note before the jury. As for the second theory, our supreme court has decided:

> A plea of not guilty in a criminal case places in issue the credibility of all the State's witnesses. If the State is allowed to prevail on its theory that there is an independent relevancy to bad-acts evidence for credibility purposes, this doctrine could be invoked in nearly every criminal case.

*State v. Mitchell*, 633 N.W.2d 295, 300 (Iowa 2001). Neither of the State's theories satisfies the *Sullivan* test for evidence offered under rule 5.404(b).[2]

But even if the State had articulated a valid noncharacter theory of admissibility, the disputed evidence would have been inadmissible "if its probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." *See* Iowa R. Evid. 5.403. This rule constitutes a balancing test, where the district court must measure the danger of unfair prejudice, confusion of the issues, or misleading of the jury against the probative value of the evidence; if the scale tips toward the unfair prejudice categories, exclusion is appropriate. *See Richards*, 879 N.W.2d at 145 n.1 (clarifying that under rule 5.403 courts determine whether prejudice substantially outweighs probative value). Evidence is unfairly prejudicial if it does any of the following: "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human

---

[2] After reviewing the evidence at issue and the parties' arguments de novo, we find trial counsel breached a material duty in not challenging the handwritten note and Horseshoe Casino video under rule 5.404(b). Moreover, we conclude counsel's omission resulted in actual prejudice to Divis. *See Shanahan*, 712 N.W.2d at 138 (analyzing whether there was reasonable probability the outcome of the case would have been different if the court had excluded other-bad-acts evidence). We will discuss the prejudice prong in more detail in conjunction with our harmless-error analysis under rule 5.403.

action [that] may cause a jury to base its decision on something other than the established propositions in the case." *State v. Neiderbach*, 837 N.W.2d 180, 202 (Iowa 2013) (alteration in original) (quoting *State v. Henderson*, 696 N.W.2d 5, 10–11 (Iowa 2005)).

The danger of unfair prejudice based on the content of the handwritten note—partially visible on the Horseshoe Casino video and fully visible in the exhibit offered at trial—was considerable. With only Stever's testimony, the jurors were left to infer from the context of her encounter with Divis that his threat to inject her with an unidentified substance reasonably placed her in fear of immediate serious injury though she could see neither a needle nor the substance in the syringe. But once the jurors saw the handwritten note referencing a needle and HIV-infected blood, they were allowed to supplement Stever's testimony with more harrowing facts that were not part of the incident between Stever and Divis at the Ameristar Casino. HIV infections pose a serious health hazard, prompting our legislature to criminalize the intentional transmission of such infectious diseases. *See* Iowa Code § 709D.3. And even beyond the mention of HIV-infected blood, the handwritten note was more emphatic and alarming, stating "one poke" could change your life, "This is not a game!!," and Divis and his companions had "nothing to lose." The content and tone of the handwritten note appealed to the jurors' fears and may have caused them to base their decision on emotion rather than the established propositions in the case.

In addition, the handwritten note and Horseshoe Casino video risked confusing the issues and misleading the jury into believing that both notes could

be considered for the assault or threat element of robbery. We conclude the danger of unfair prejudice and jury confusion substantially outweighed the probative value of the disputed evidence. Accordingly, the district court abused its discretion in admitting into evidence the handwritten note and the surveillance video showing Divis holding the note at the second casino.

Finally, the State argues admission of the handwritten note and Horseshoe Casino video amounted to harmless error. *See State v. Traywick*, 468 N.W.2d 452, 454–55 (Iowa 1991) (framing test for non-constitutional error as "whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice" (quoting *State v. Massey*, 275 N.W.2d 436, 439 (Iowa 1979))). The State asserts Stever's testimony and the Ameristar Casino video provided "overwhelming" evidence of Divis's guilt, even if the second casino video and note had been excluded.

We are not convinced by the appellate argument that the disputed evidence was insignificant to the State's case. The trial prosecutor repeatedly relied on these exhibits. For instance, in its opening statement, the prosecution previews "some amazing camera work that goes on that you guys are going to see from Horseshoe Casino. You might feel a little safer about going to the casino after you see this because they can do quite the things." The prosecutor then tells the jurors about the handwritten note Divis is seen holding on the video and recites the note word for word. The prosecutor continues: "[Y]ou'll hear from Officer Rich Stehly [who] arrived, apprehended Mr. Divis, took that note out of his hand and found a syringe in Mr. Divis's pocket." In the next breath, the

prosecutor states: "Ladies and gentlemen, when Mr. Divis threatened to inject Cassandra Stever with the syringe at the Ameristar Casino on November 28, 2014, he placed her in fear of harmful contact or injury." The prosecutor did not clarify that the note seized from Divis at the Horseshoe Casino was not how he threatened Stever at the Ameristar Casino.

The prosecution admitted the video into evidence through the testimony of Jeff Graber, director of surveillance for the Horseshoe Casino, and admitted the handwritten note into evidence during the testimony of Detective Stehly. The prosecutor published the note to the jury just before the detective discussed retrieving the syringe from Divis's pocket.

The prosecutor also featured the Horseshoe Casino video and handwritten note prominently in closing argument. The prosecutor played the video for the jury, narrating:

> Later that day . . . the defendant is at the Horseshoe. Approximately eleven hours, right? And if you remember the videotape, he wasn't gambling, was he? He was doing the same thing as the other videotape, walking around, looking. But surveillance is on him, aren't they? So they're watching him. And what do they see? They see the note, don't they . . . in his hand. So they keep zooming in to see what they can find. . . . [T]here's the note . . . . And what do they find in the pocket? There it is; the syringe.

The State's closing argument lumps together the syringe seized from Divis, which Stever identifies as the instrument shown to her at the Ameristar Casino, with the handwritten note that was not shown or communicated to Stever. The trial prosecutor discussed the handwritten note again in rebuttal closing, recounting: "The defendant is holding a demand note that threatens to poke

whoever he gives the note to with a needle full of HIV-infected blood if that person does not give their gambling ticket to him."

Given the State's heavy reliance on the handwritten note and Horseshoe Casino video, and the prosecutor's opportunistic use of that other-bad-acts evidence to prove the threat element of second-degree robbery, we cannot say its admission was harmless. *See Sullivan*, 679 N.W.2d at 30 (finding improperly admitted information was not harmless when it had a "powerful and prejudicial impact" on the jury (quoting *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994))). Similarly, on the question of *Strickland* prejudice arising from trial counsel's failure to argue rule 5.404(b), we find a reasonable probability that but for counsel's omission, the jury would not have convicted Divis. While the State's proof was sufficient to satisfy the elements of robbery in the second degree, we do not find overwhelming evidence to support the threat element. *See Ledezma v. State*, 626 N.W.2d 134, 148–49 (Iowa 2001) (finding it easier to question reliability of verdict when State's evidence is not overwhelming). Accordingly, we reverse and remand for a new trial excluding the handwritten note and the portion of the Horseshoe Casino video revealing the note.

Because we have granted Divis's requested relief on his evidence claim, we decline to reach his ineffective-assistance claim alleging counsel should have filed a motion to suppress based on an illegal search and seizure.[3]

**REVERSED AND REMANDED FOR NEW TRIAL.**

---

[3] We take no position on Divis's ability to litigate the suppression issue on remand. *See State v. Johnson*, 756 N.W.2d 682, 686 (Iowa 2008) (holding res judicata did not apply when defendant raised a suppression issue on appeal but conviction was reversed on another ground).