**IN THE COURT OF APPEALS OF IOWA**

No. 17-1359
Filed August 1, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**OSCAR MARCO GIPSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink (trial and sentencing) and Scott D. Rosenberg (verdict), Judges.

Oscar Marco Gipson appeals his conviction by jury trial for going armed with intent on sufficiency-of-the-evidence grounds. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Oscar Marco Gipson sprayed the front of a Des Moines pub with bullets shot from a semiautomatic rifle. He contends the State did not prove he intended to use the weapon against another person—an element of going armed with intent. Considering all of the evidence in the light most favorable to the jury's verdict, we find substantial proof of Gipson's intent. Accordingly, we affirm his conviction.

## I.      Facts and Prior Proceedings

In January 2017, Gipson and his girlfriend, Tara Nguyen, were arguing "more often than usual." Nguyen went to stay with her mother for a few weeks. Around the same time, Nguyen let an old friend borrow her Buick. When Gipson saw the friend driving, Gipson took the Buick from him.

On January 21, the friction between Nguyen and Gipson escalated when they encountered each other at the Beaver Tap. Gipson came into the bar with several friends and asked to talk with Nguyen outside. Gipson yelled at Nguyen, asked who she was with, and told her to leave. Nguyen left, heading across the street to Saints Pub. Gipson and his friend, Derrick Peoples, watched Nguyen go into the pub. Peoples said Gipson then went to his car, took his AK-74 semiautomatic rifle[1] out of the trunk, and started shooting toward the pub. Unbeknownst to Gipson, Nguyen had already left Saints Pub after calling a friend to pick her up. She left through the back door, not visible to Gipson.

---

[1] A criminalist with the Iowa Division of Criminal Investigation testified the weapon was a RATMIL AK-style rifle, sometimes referred to as an AK-74. It is designed to look like an AK-47 but shoots a smaller caliber bullet.

Gipson's shooting sounded like a "mag dump" according to the description from a witness who was drinking at another nearby bar that night. The witness testified: "Somebody emptied a semiautomatic rifle. It wasn't a pistol. I could tell the difference." A bartender at Saints Pub heard sounds like "pops" that prompted everyone in the bar drop to the floor. Television screens inside the bar were hit. Several windows and the bar's external garage doors also bore bullet holes. Bullets damaged four cars in the pub's parking lot. Investigators determined twenty-five bullet casings recovered from the scene came from an AK-74 semiautomatic rifle.

Gipson fled the scene, but law enforcement later connected him to the shooting through reports from his friends at the bar. Officers also recovered the semiautomatic rifle, which Nguyen identified as belonging to Gipson. The State charged Gipson with two counts of being a felon in possession of a firearm; one count of going armed with intent; one count of intimidation with a dangerous weapon; two counts of criminal mischief; and one count of reckless use of a firearm. A jury returned guilty verdicts on all counts except for intimidation with a dangerous weapon. The court sentenced Gipson to imprisonment not to exceed twenty-seven years.

On appeal, Gipson contends the evidence was insufficient to convict him of going armed with intent, in violation of Iowa Code section 708.8 (2017).

## II.    Standard of Review

We review Gipson's challenge to the sufficiency of the evidence for the correction of legal error. *See State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016). If the jury's verdict is supported by substantial evidence, we uphold it. *See State v.*

*Rohm*, 609 N.W.2d 504, 509 (Iowa 2000). Evidence is substantial if it would convince a reasonable fact finder of a defendant's guilt beyond a reasonable doubt. *Id.* We review the facts in the light most favorable to the verdict and consider not only evidence bolstering the verdict, "but all reasonable inferences which could be derived from the evidence." *Id.*

## III. Analysis

To convict Gipson of going armed with intent, the State was required to prove the following elements:

> 1. On January 21 through 22, 2017, [Gipson] went armed with a dangerous weapon.
> 2. A Ratmil Romak semi-automatic rifle is a dangerous weapon.
> 3. [Gipson] had the intent to use said dangerous weapon without justification against another.
> 4. While armed with the weapon, [Gipson] moved from one place to another.

Gipson challenges the State's proof of the third element—that he intended to use the weapon against another person. He emphasizes unoccupied vehicles incurred most of the bullet damage. And any damage to Saints Pub was incidental. He also denies making threats to harm any person.

"[A] conviction for going armed with intent requires proof that the defendant carried a dangerous weapon with the specific intent to use it to inflict serious injury." *United States v. Gomez-Hernandez*, 300 F.3d 974, 980 (8th Cir. 2002) (discussing elements of Iowa Code section 708.8). When the dangerous weapon is a firearm, "intent to use" means "intent to shoot another person." *State v. Slayton*, 417 N.W.2d 432, 434 (Iowa 1987). Specific intent is "seldom capable of direct proof, but may be shown by reasonable inferences drawn from facts established." *State*

*v. Chatterson*, 259 N.W.2d 766, 769–70 (Iowa 1977). The jury may presume "a person intends the natural consequences of his intentional acts." *Id.* at 770. But the legislature limited the inferences available under section 708.8, specifying: "The intent required for a violation of this section shall not be inferred from the mere carrying or concealment of any dangerous weapon itself, including a loaded firearm, whether in a vehicle or on or about a person's body."

In its closing argument, the State discussed Gipson's intent.

> Who went armed with a dangerous weapon? Oscar Gipson. What was he thinking? He was thinking, "I'm going to use it with intent against another." Now, the jury instruction says, "against another." It doesn't say, "Tara Nguyen." But you know it's Tara Nguyen. And how do you know that? You know that from direct and circumstantial evidence.

The State reminded the jury about Nguyen's long-time relationship with Gipson and highlighted what happened right before the shooting—"they had been having words. She'd been staying at her mom's house on the weekends. And you know now that the defendant took his guns and her guns and moved out."

Viewing the record in the light most favorable to the State, we find ample evidence for the jury to conclude Gipson intended to shoot Nguyen. Their romantic relationship was strained; he had already confronted Nguyen's friend for driving her Buick; he argued with Nguyen at Beaver Tap and watched as she left for Saints Pub across the street. He then collected his AK-74 from his car and shot at the pub more than two dozen times. The gunfire caused people in the pub to fear for their lives and dive to the floor. Some bullets went through the windows into the occupied bar itself and shot out television screens. Other bullets hit cars in the parking lot. Gipson was not aware Nguyen already left the pub out the back door.

The jury did not infer Gipson's intent merely from his concealment of a loaded firearm in his vehicle. The jury could reasonably infer he intended to shoot Nguyen or at least knew shooting her was a natural consequence of his actions. The jury also could infer Gipson was aware when he sprayed bullets at the pub that a natural consequence would be hitting a different person in the occupied business. *See State v. Buchanan*, 207 N.W.2d 784, 786 (Iowa 1973) (interpreting predecessor statute as containing no requirement that defendant "have intent to shoot some particular person"). The absence of a threat by Gipson before the shooting does not diminish the inferences from his actions. nor does the fortunate fact he ended up hitting only objects. Substantial evidence supports the verdict, and we affirm the conviction.

**AFFIRMED.**