Linda FULLMER, As Administrator of the Estate of Joshua Daniel Fullmer, Deceased, and Robert Fullmer, Individually, Appellants,

v.

James TAGUE III and Paige Tague, Appellees,

v.

Jerry D. McLAUGHLIN II, Third–Party Defendant.

No. 91–1503.

Supreme Court of Iowa.

May 19, 1993.

William J. Bribriesco of William J. Bribriesco & Associates, Bettendorf, for appellants.

Richard M. Batcher of Bozeman, Neighbour, Patton & Noe, Moline, IL, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

NEUMAN, Justice.

This appeal concerns the aftermath of a high school graduation party at which keg beer was provided for the underage celebrants. After leaving the party, eighteen-year-old Joshua Fullmer was killed when the car in which he was a passenger spun out of control and slid down an embankment adjoining Highway 67 south of LeClaire. The car's driver, Jerry McLaughlin, had been drinking at the party and registered a .149 blood alcohol concentration after the accident.

Linda Fullmer, Joshua's stepmother and administrator of his estate, sued the underage host of the party, James Tague III (hereinafter "Jim Tague"), and Tague's parents, Paige Tague and James Tague, Jr. on a theory of common-law liability for supplying beer to persons under legal age in violation of Iowa Code section 123.47

(1991).[1] Joshua's father, Robert Fullmer, sued the same parties for his loss of parental consortium. In a separate action the Fullmers sued the driver, Jerry McLaughlin, for loss to the estate and consortium damages sustained as a result of his negligence. The Tagues, in turn, filed third-party claims against McLaughlin. In a separate criminal proceeding, McLaughlin pleaded guilty to vehicular homicide and served time in prison.

Following discovery and prior to trial, the Fullmers voluntarily dismissed their suits against James Tague, Jr. and Jerry McLaughlin. The district court subsequently sustained Paige Tague's motion for summary judgment. The case went to trial on Fullmers' claims against defendant Jim Tague and Tagues' cross-petition against McLaughlin. On the estate's claim, the jury returned special verdicts for damages in the sum of $60,768, with fault apportioned as follows: Joshua (the decedent), twenty-five percent; Jim (the host), ten percent; Jerry (the driver), sixty-five percent. On Robert's consortium claim, the jury found that he was without fault and awarded damages of $35,000. No punitive damages were awarded.

On appeal from the judgment entered on the jury's verdicts, plaintiffs cite three errors. First, they challenge the court's entry of summary judgment for Paige Tague. Second, they claim the court erroneously substituted its judgment for the jury's on the consortium verdict. Finally, they assert the court committed reversible error when it refused to admit evidence of a subsequent beer party held at the Tagues'.

Defendant Jim Tague cross-appeals from the court's refusal to grant him judgment notwithstanding the verdict, alleging that (1) Iowa Code section 123.47 does not prohibit one underage person from selling, serving or supplying beer to another; and (2) the record does not support a finding that Jim Tague affirmatively delivered beer to an underage person in violation of the statute.

For the reasons that follow, we affirm the judgment of the district court.

I. *Summary judgment for Paige Tague.* The record reveals that Jim Tague hosted this party for his friends in a ravine behind a vacant house once occupied by his family. The premises had been vacated as the result of a mortgage foreclosure, so Jim's parents were renting a house two blocks away. Jim no longer lived with them. It is undisputed that Jim's father knew nothing about the party or the purchase of beer until a neighbor told him about the fatal car accident the following morning.

The disputed question is whether Jim's mother, Paige, knew sufficiently more about the party to subject her to liability for Joshua's death. In response to Paige's motion for summary judgment, the district court found as a matter of law that she did not. The record supports the court's decision.

Iowa Code section 123.47 states: A person shall not sell, give, or otherwise supply alcoholic liquor, wine, or beer to any person knowing or having reasonable cause to believe that person to be under legal age, and a person or persons under legal age shall not individually or jointly have alcoholic liquor, wine, or beer in their possession or control. . . .

We have held that the statute establishes the minimum standard of care for a common-law negligence action premised on furnishing alcoholic beverages to a minor. *Bauer v. Cole,* 467 N.W.2d 221, 223 (Iowa 1991); *Lewis v. State,* 256 N.W.2d 181, 187–89 (Iowa 1977). To prevail on such a cause of action, however, a plaintiff must prove the defendant's knowing and affirmative delivery of the beer to the underage person. *Bauer,* 467 N.W.2d at 223–24; *DeMore v. Dieters,* 334 N.W.2d 734, 737 (Iowa 1983). The statutory term "otherwise supply" means more than merely permitting or allowing beer to be consumed on a defendant's premises. *DeMore,* 334 N.W.2d at 737.

The plaintiffs' case against Paige rested solely on a check she reportedly gave Jim

---

1.  "Legal age" means 19 years of age or more. Iowa Code § 123.3(33).

for sixty-five dollars made payable to "Fred's," a local gas station. Besides gas, Fred's also sells pop, snack foods, and beer by the can and keg. Jim used Paige's check to pay for the beer and the tapper deposit. At the time of the sale, one of Jim's friends worked at the gas station. He and Jim agreed that, if asked, the station owner would be told that Paige herself picked up the keg.

█ In fact plaintiffs' response to Paige's motion for summary judgment offered no evidence to suggest that Paige had any knowledge that her check would be used to purchase beer. Moreover, there is not a scintilla of proof that she otherwise knew of the party or the underage drinking. It is undisputed that she neither hosted the party nor was she present where the friends gathered. She did not see, talk to, or give beer to Jerry McLaughlin.

█ In response to the motion, plaintiffs offered testimony by the gas station attendant that Jim told him his parents planned to chaperone the party and would collect car keys to avoid the risk of impaired drivers. As correctly noted by the district court, this statement could be used at best to impeach Jim Tague's denial that he ever said such a thing. It was hearsay inadmissible to prove any affirmative knowledge or act on the part of Paige Tague. The record is devoid of any other proof that Jim either gave or would give testimony that his mother knew anything about the party. In the district court's words, "[d]epositions have been taken in this case, and the Court is certain that if there were any such testimony plaintiffs would have produced it for the Court."

A party resisting a motion for summary judgment must come forth with specific facts demonstrating the existence of genuine issues for trial. *Suss v. Schammel,* 375 N.W.2d 252, 254 (Iowa 1985). We must agree with the district court that the plaintiffs came forward with no proof on the two essential elements of their cause of action against Paige: that she knowingly and affirmatively delivered beer to minors. Thus she was entitled to judgment as a matter of law in accordance with the district court's ruling.

II. *Consortium claim verdict.* In its instructions to the jury the district court explained the circumstances under which Robert Fullmer could recover for loss of parental consortium. It further told the jury that in reaching a decision it should compare the fault of Robert, Jim Tague, and Jerry McLaughlin. The verdict form on the consortium claim, however, asked only for the fault, if any, attributable to Robert. The jury answered "zero."

The failure to include Jim and Jerry on the verdict form was not brought to the court's attention until after the jury had been discharged. After consulting with counsel, the court entered judgment on the consortium award in proportion to the way the jury had allocated fault on the estate's claim. It modified the allocation, however, by first subtracting Joshua's twenty-five percent share of the fault. *See Nichols v. Schweitzer,* 472 N.W.2d 266, 272 (Iowa 1991) (consortium claim not derivative and therefore claimant's recovery not diminished by decedent's fault). It then took the remaining fault (seventy-five percent) and allocated it to Jim and Jerry in proportion to the jury's prior allocation of fault against them. Thus the court calculated Robert's judgment against Jim at 10/75ths of $35,000 ($4669) and Robert's judgment against Jerry at 65/75ths of $35,000 ($30,-333.33).

█ Fullmer challenges the court's judgment entry on two grounds. First, he claims that *Schwennen v. Abell,* 430 N.W.2d 98 (Iowa 1988), and *Nichols v. Schweitzer,* 472 N.W.2d 266 (Iowa 1991), stand for the proposition that there can be no apportionment of fault on a loss of consortium claim. The contention is without merit. Both cases simply hold that the fault of an injured or deceased spouse will not reduce the deprived spouse's consortium claim. *Schwennen,* 430 N.W.2d at 102; *Nichols,* 472 N.W.2d at 272. The cases do not hold that the fault of all other parties to the claim should not be compared. In fact, *Schwennen* was remanded for just that purpose. *Schwennen,* 430

N.W.2d at 104; *see also* Iowa Code § 668.-3(2)(b) (in trial of claim involving fault of more than one party, jury required to make findings on percentage of total fault allocated to each claimant, defendant, and third-party defendant).

■ Second, Fullmer contends that the court was without authority to substitute its fact-findings for the jury's. Assuming for the sake of argument that this is what the court did, we are convinced the procedure is authorized by Iowa Rule of Civil Procedure 205. That rule, governing special verdicts, provides in pertinent part that "[i]f the submission omits any issue of fact, any party not demanding submission of such issue before the jury retires waives jury trial thereof, and the court may find upon it...." Iowa R.Civ.P. 205.

Clearly the verdict form omitted the factual question of Jim's and Jerry's comparative fault on the consortium claim. The record also plainly reveals that neither party demanded a jury finding on this issue. Under rule 205, therefore, jury trial on the issue was waived. The court was thus authorized to "find upon it" and did so in accordance with the jury's fault findings on analogous claims. As will be discussed further in this opinion, the record contains ample support to uphold those findings. Accordingly, no legal reason exists to set aside the court's judgment.

III. *Evidentiary ruling.* Plaintiffs attempted to introduce evidence of a second beer party held by Jim some months later at the same location. They claimed the evidence was relevant on the issue of punitive damages, to show the extent and nature of Jim's willful misconduct, and to deter such unlawful conduct in the future. On appeal they claim the court's refusal to permit this line of inquiry under Iowa Rule of Evidence 404(b) entitles them to a new trial.

■ Evidentiary rulings under rule 404(b) are committed to the sound discretion of the trial court. *State v. Munz,* 355 N.W.2d 576, 580 (Iowa 1984). Here the court noted that the evidence in question pertained to an event *postdating* the event giving rise to the litigation. Thus it concluded the evidence was not relevant to any showing that Jim's conduct on the night of Joshua's death demonstrated a pattern of wrongful conduct. *Cf. Kellar v. Peoples Natural Gas Co.,* 352 N.W.2d 688, 693 (Iowa App.1984) (punitive damages allowable upon proof of unlawful conduct "committed or continued" in reckless disregard of plaintiff's rights). Moreover, the court viewed the mention of the subsequent beer party as highly inflammatory and likely to unfairly prejudice the defendant. *See* Iowa R.Evid. 403. We find no abuse of the trial court's discretion in refusing to admit the tendered evidence.

IV. *Cross-appeal.* On appeal from the court's denial of his motion for judgment notwithstanding the verdict, Jim Tague contends the record is insufficient to prove his affirmative delivery of beer to minors and, even if it does, that Iowa Code section 123.47 does not make it unlawful for him to do so. We shall briefly consider the arguments in turn.

■ A. *Sufficiency of the evidence.* The thrust of Jim's argument is that this was a "help yourself" or "pour your own" beer party and thus a reasonable jury could not find the affirmative delivery of beer required for liability under *DeMore,* 334 N.W.2d at 737, and *Bauer,* 467 N.W.2d at 224. The argument is wholly unpersuasive. The record reveals that Jim bought the beer, provided the cups, and joined in the party, all the while knowing (and observing) that underage friends were drinking from the keg. The fact that Jim did not personally fill his guests' beer glasses does not minimize his affirmative conduct.

The case is clearly distinguishable from *DeMore.* There we held that an adult who merely gave permission for a party on his rural property could not be found liable under section 123.47 for "otherwise supply[ing]" beer to a minor who was later injured. *DeMore,* 334 N.W.2d at 737–38. Likewise, the import of *Bauer* is that, for liability to attach, the affirmative violation of section 123.47 must be knowing. *Bauer,* 467 N.W.2d at 224. A jury could have easily found the *DeMore* and *Bauer*

standards met under this record. The court was correct in so ruling.

■ B. *Prohibited conduct under section 123.47.* Jim's second argument is that Iowa Code section 123.47 does not prohibit one underage person from supplying alcohol to another. The issue is one of statutory construction. Jim argues that the statute prohibits "a person" from supplying alcohol and "a person or persons *under legal age*" from possessing it. Iowa Code § 123.47 (emphasis added). According to Jim, if the legislature had wanted to prohibit what he did, it would have said "no *underage* person shall sell, give, or otherwise supply...."

We are not persuaded by Jim's rationale. Although he is correct in noting that the term "person" is not defined in the alcohol control statute to specifically include minors, a common-sense reading of the chapter's provisions indicates a clear intent to restrict traffic in alcohol among adults and nonadults alike. The statute reveals a strong public policy of preventing alcohol from reaching minors. *Bauer v. Dann,* 428 N.W.2d 658, 661 (Iowa 1988); *DeMore,* 334 N.W.2d at 737.

It would be illogical to assume that the legislature intended to forbid an adult from giving an underage person alcohol, but intended to permit the transfer from one minor to another. This is especially so since, by statute, adults are not the only ones permitted to lawfully possess alcohol; an underage person can consume it at home with a parent's consent, and may handle alcoholic beverages during the course of employment. Iowa Code § 123.47. Given this controlled access by minors as well as adults, we believe it reasonable to assume that the legislature intended to prevent minors, as well as adults, from unlawfully supplying an underage person. The district court was correct in so ruling.

**AFFIRMED ON BOTH APPEALS.**