Carolyn FREEMAN, Plaintiff,

v.

Scott BUSCH, Gene C. Hildreth, John Hatfield, Defendants.

No. Civ.1–99–CV–10063.

United States District Court, S.D. Iowa, Western Division.

April 8, 2002.

William F. McGinn, McGinn McGinn & Jennings, Council Bluffs, IA, Thomas M. White, Welch White & Wulff, Omaha, NE, for Plaintiff.

Maggi Moss, Jennifer Larson, Tammy Westhoff, Jane White, Parrish Krruidenier Moss Dunn & Montgomery LLP, Rodney J. Ryan, Lori E. Loftsgard, Gregory O. Hapgood, Peddicord Wharton Spencer & Hook PC, Des Moines, IA, for Defendants.

## ORDER

LONGSTAFF, Chief Judge.

THE COURT HAS BEFORE IT defendant Scott Busch's motions for summary judgment and to dismiss for lack of subject matter jurisdiction, both filed December 3, 2001. Plaintiff resisted the motion to dismiss on December 27, 2001 and the motion for summary judgment on January 4, 2002. On January 16, 2002, Busch filed a reply memorandum in support of his motion for summary judgment. The motions are fully submitted.

## I. BACKGROUND

The following facts either are not in dispute or are viewed in a light most favorable to plaintiff.[1] At all times material to the present action, defendant Scott Busch was a student at Simpson College in Indianola, Iowa. He resided in Room 407 of Buxton Hall, a college-owned dormitory.

A few days prior to March 21, 1998, Busch invited plaintiff Carolyn Freeman, as well as her friends Anne Huffman and Ricci Kowalski, to his dormitory room for a social gathering scheduled for March 21. Plaintiff, Huffman and Kowalski accepted the invitation with the expectation that alcohol would be served at the party. Busch knew that all three women were approximately nineteen years of age at the time of the party.

An individual named Brian Davis purchased one bottle of vodka and one bottle

---

1. The facts are viewed in this manner for purposes of Busch's summary judgment mo-
tion only. Additional facts are outlined with respect to Busch's motion to dismiss.

of rum for the party. Busch supplied lite beer, cups, condiments and other party supplies, and contributed toward the purchase of the rum and vodka.

Plaintiff admits to having consumed alcoholic beverages before March 21, 1998, and states that vodka was her alcoholic beverage of choice. Plaintiff understood the physical impact that alcohol could have on her body. On at least one occasion before March 21, 1998, plaintiff consumed twelve straight shots of vodka in a relatively short time period.

On the evening of March 21, 1998, Busch drove the three women from Ames to Indianola for the party. Busch reported to investigators that after arriving at the party, plaintiff consumed five to six shots of straight vodka, taken in three-ounce cups. The cup was at least half full with each shot. Ricci Kowalski has also indicated she poured two drinks of rum for plaintiff. Assuming the drinks Kowalski poured for plaintiff were one ounce each, plaintiff consumed a minimum of nine to eleven ounces of hard liquor in one hour.

None of the alcoholic drinks plaintiff consumed were mixed or poured by Busch. Busch set up the sugar, salt and lemon used for the shots, however.

After consuming a certain amount of alcohol, plaintiff appeared intoxicated. Busch, with assistance from Kowalski and/or Huffman, led plaintiff to a bedroom to lie down. Huffman removed plaintiff's contact lenses.

Shortly thereafter, plaintiff began to vomit. Because plaintiff vomited on her clothes, Busch gave Huffman some of his clean clothes so that Huffman and/or Kowalski could change plaintiff out of her soiled garments.

At approximately 12:15 a.m. on March 22, 1998, Busch spoke to Brian Huggins, the on-duty resident advisor for Buxton Hall, and informed Huggins that plaintiff had been drinking and was passed out on his bed. Busch also told Huggins that plaintiff had been vomiting and had at one point thrown-up blood.

Subsequently, while plaintiff remained in an altered mental state, Busch had sexual intercourse with her. Plaintiff claims she was incapable of consenting to intercourse due to her intoxicated state. She is unable to recall the evening's events in a coherent manner.

Shortly thereafter, Busch lifted up plaintiff's blouse and removed her bra to reveal plaintiff's breasts to defendants John Hatfield and Gene Hildreth. In a January 29, 2001, deposition, Hildreth described the incident as follows:

Q. When [Busch] called you back to the bedroom, [plaintiff] was just laying in the bed; is that correct?

A. Correct.

Q. And your impression is that she was passed out? At least that's what you told Detective Duke?

A. That was my impression. That was my impression.

. . . . .

Q. Mr. Hildreth, when Busch called you back to the bedroom he said, "Gene, look at this," and lifted up [plaintiff's] shirt. Is that what you said on the tape?

A. That's what I said at that time.

Q. That's a little bit different than just saying, "Look at this" pointing at a person's toes or feet or knees, isn't it?

A. Yes.

Deposition of Gene Hildreth at 62:11–63:6, Plaintiff's Exh. 5. Hildreth disputes whether he then touched plaintiff's breasts.

Hatfield described the incident in a manner similar to Hildreth. Hatfield further admits that when Busch encouraged him

to touch plaintiff's breasts, he did in fact do so. He then quickly left the room, knowing he was in a bad situation.

Plaintiff claims that the events of the evening resulted in permanent injury and numbness to her left arm, and has caused her to suffer from clinical depression with suicidal tendencies. Plaintiff also alleges she suffered bruising and internal injuries as a result of the alleged nonconsensual intercourse.

Plaintiff filed the present action on December 17, 1999, asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship. In Count I of her complaint, plaintiff alleges that Simpson College, Brian Huggins and Busch were negligent, presumably in allowing alcohol to be served to a minor, and in failing to summon medical help despite knowing that plaintiff was inebriated, unconscious, and had thrown-up blood.[2] Count II of plaintiff's complaint sets forth a cause of action for rape against defendant Busch. In Count III of her complaint, plaintiff alleges defendants Busch, Hildreth and Hatfield committed sexual assault.[3]

## II. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Defendant Busch now moves for summary judgment in his favor on all three Counts of the Complaint. Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Walsh*

*v. United States*, 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248. "As to materiality, the substantive law will identify which facts are material. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Whether Summary Judgment is Appropriate under Count I

### 1. Negligent Failure to Summon Medical Assistance

As set forth above, plaintiff alleges in Count I of her Complaint that she suffered certain injuries that were proximately caused by Busch's negligence. Specifically, plaintiff contends the injuries to her left arm were proximately caused by Busch's alleged failure to summon medical treatment. Complaint ¶ 14.

■ As summarized in this Court's March 5, 2001 Summary Judgment Order:

A finding of negligence requires a legal duty owed to the plaintiff, a breach of that duty, proximate cause, and damages. *Hartig v. Francois*, 562 N.W.2d

---

**2.** On March 5, 2001, this Court granted summary judgment in favor of Simpson College on all claims against it. *See Freeman v. Busch*, 150 F.Supp.2d 995 (S.D.Iowa 2001). Brian Huggins, the resident advisor on-duty in Buxton Hall during the evening at issue,

was not named as an individual defendant in the action.

**3.** The Court notes that Simpson College originally was named as a defendant in Counts II and III.

427, 429 (Iowa 1997) (citations omitted). The threshold element, the existence of a duty of care, is a question of law properly resolved on summary judgment. *Garofalo v. Lambda Chi Alpha Fraternity,* 616 N.W.2d 647, 650 (Iowa 2000) (citations omitted). In general, the law imposes no affirmative duty upon individuals to act for the protection of others. *Id.* at 652 (citing Restatement (Second) of Torts § 314, at 116 (1965)). In cases where the plaintiff alleges that her injury resulted from a failure to act, the law requires the existence of a "special relationship" between the injured party and the alleged negligent party before a legal duty will be found to exist. *Dettmann v. Kruckenberg,* 613 N.W.2d 238, 251 (Iowa 2000) (citations omitted). Commonly-recognized "special relationships" include common carrier/passenger, innkeeper/guest, landlord/invitee, and peace officer/arrestee. *Garofalo,* 616 N.W.2d at 652 (citing Restatement (Second) of Torts § 314A, at 118 (1965)). *Freeman v. Busch,* 150 F.Supp.2d 995, 1000 (S.D.Iowa 2001). " '[S]pecial relations' are those in which the law recognizes a duty to aid or protect persons in a relationship of 'dependence or mutual dependence.' " *Garofalo,* 616 N.W.2d at 652 (citing Restatement (Second) of Torts § 314A, at 118, cmt. b).

■ In the present case, plaintiff does not attempt to argue there was a special relationship between her and Busch such that Busch had an affirmative duty to protect her. *See* Restatement (Second) of Torts § 314A. Nor is there evidence of such a relationship. Accordingly, the Court finds as a matter of law that Busch had no *inherent* duty to summon medical assistance based on section 314A of the Restatement (Second) of Torts.

As noted by Busch in his memorandum, section 324 of the Restatement (Second) of Torts also imposes a duty of reasonable care on one who is otherwise under no duty, but nevertheless "takes charge of another who is helpless adequately to aid or protect himself." Restatement (Second) of Torts § 324; *see also Garofalo,* 616 N.W.2d at 655 (applying section 324). In *Garofalo,* the Iowa Supreme Court concluded the decedent's fraternity brother had not "taken charge" simply by allowing the decedent to "sleep off" his intoxication on the couch in his room. *Garofalo,* 616 N.W.2d at 655.

■ Plaintiff does not argue in her memorandum that Busch "took charge" of her while she was in an intoxicated state, and the Court finds insufficient evidence to impose such a duty. Following *Garofalo,* the Court finds summary judgment is appropriately granted under this possible theory of recovery.

■ Similarly, section 323 of the Restatement (Second) of Torts also imposes a duty of care on one "who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things." Restatement (Second) of Torts § 323. To be liable under this section, however, an individual must not only undertake to assist another person, but in doing so, must place the person needing assistance at a greater risk of harm. *See, e.g. Jain v. State,* 617 N.W.2d 293, 299 (Iowa 2000). As noted by Busch, plaintiff does not argue, nor is there evidence, that Busch's conduct in any way increased plaintiff's risk of damage to her left arm, for which plaintiff seeks to recover in Count I of her Complaint. Summary judgment is therefore granted under this theory.

2. Serving Alcohol to a Minor

Although not expressly set forth as a basis for recovery in Count I, plaintiff

argues in her resistance brief that Busch should be held liable under Count I for serving alcohol to a minor. Because Busch has not objected to this issue as beyond the scope of the Complaint, and has fully addressed the issue in his motion papers, the Court will consider the issue on its merits.[4]

Iowa Code § 123.47 renders it unlawful to "sell, give, or otherwise supply alcoholic liquor, wine, or beer to any person knowing or having reasonable cause to believe that person to be under legal age." Iowa Code § 123.47 (2001). In Iowa, " 'legal age' means twenty-one years of age or more." *Id.* § 123.3(19).

The Iowa Supreme Court has held that "[v]iolation of this law will support a common law cause of action by the underage person against the person furnishing the alcohol." *Garofalo*, 616 N.W.2d at 652 (citing *Sage v. Johnson*, 437 N.W.2d 582, 584–85 (Iowa 1989)). " 'To prevail on such a cause of action, however, a plaintiff must prove the defendant's *knowing* and *affirmative delivery* of the [alcoholic beverage] to the underage person.' " *Id.* (quoting *Fullmer v. Tague*, 500 N.W.2d 432, 434 (Iowa 1993)) (emphasis added in *Garofalo* ).

In the present case, defendant Busch does not seriously dispute he knew or had "reasonable cause to believe" plaintiff was under twenty-one years of age on March 21, 1998. *See* Deposition of Scott Busch ("Busch Dep.") at 20:23–25, Plaintiff's Exh. 1. Busch nevertheless argues that he cannot be held liable for violating section 123.47 because he did not "sell, give, or otherwise supply" plaintiff with the alcoholic beverages she consumed in or around his dormitory room that evening. *See Ga-*

*rofalo*, 616 N.W.2d at 652 ("The statutory term 'otherwise supply' means more than merely permitting or allowing beer to be consumed on a defendant's premises.") (internal citations omitted). In support of this argument, Busch contends he *purchased* only the beer and party supplies, whereas Brian Davis purchased the vodka and rum actually drunk by plaintiff. *See* Defendant's Statement of Undisputed Facts at ¶ 4. There is also no evidence Busch coerced plaintiff into drinking that evening; rather it appears plaintiff was a somewhat experienced drinker and voluntarily chose to drink both rum and vodka that evening. *See* Deposition of Carolyn Freeman ("Freeman Dep.") at 59:15–20, Defendant's Exh. D.

A similar argument was addressed and rejected by the Iowa Supreme Court in *Fullmer*. *Fullmer* arose following the death of a teenage boy, Joshua Fullmer, in a car accident allegedly caused when the inebriated driver lost control of the vehicle. *Fullmer*, 500 N.W.2d at 433. Following the accident, Joshua's parents sued the host of a keg party at which the driver had been drinking, alleging he violated Iowa Code section 123.47. *Id.* On appeal following entry of a jury verdict against him, the host contended he could not be found liable under the statute because it was a " 'help yourself,' " or " 'pour your own beer party.' " *Id.* at 436. Accordingly, a reasonable jury could not find he had "affirmatively delivered" beer as required under the court's prior caselaw. *Id.* (citing *Bauer v. Cole*, 467 N.W.2d 221, 224 (Iowa 1991); *De More v. Dieters*, 334 N.W.2d 734, 737 (Iowa 1983)).

■ The Iowa Supreme Court found this argument "wholly unpersuasive." As explained by the court:

> Paragraph 8 alleges in relevant part that Busch and others provided liquor to plaintiff and her friends on the evening at issue.

---

4. The Court notes that paragraph 12 of plaintiff's Complaint, found under the heading "Count I," expressly incorporates the allegations set forth in paragraphs 1 through 11.

The record reveals that Jim bought the beer, provided the cups, and joined in the party, all the while knowing (and observing) that underage friends were drinking from the keg. The fact that Jim did not personally fill his guests' beer glasses does not minimize his affirmative conduct.

*Id.* In the present case, Busch does not dispute he invited and transported underage persons to the party knowing they would consume alcoholic beverages. *See* Busch Dep. at 20:3–6; 20:23–25, Plaintiff's Exh. 1. There is evidence to show Busch, as party host, purchased pop, cups, and other items prior to the party, and arranged the sugar, salt and lemons to be served with the vodka and rum drinks. Busch Dep. at 18:3–19:10, Plaintiff's Exh. 1; Freeman Dep. at 44:14–45:8, Plaintiff's Exh. 2. He also stated in deposition that he watched plaintiff consume alcohol at the party. Busch Dep. at 26:1–11, Plaintiff's Exh. 1. Most importantly, Busch admitted that he contributed money toward the purchase of the rum and vodka consumed by plaintiff, *see* Busch Dep. at 18:3–19:10, Plaintiff's Exh. 1. Clearly, these facts amount to "more than merely permitting or allowing beer to be consumed on a defendant's premises." *Garofalo*, 616 N.W.2d at 653 (internal citation omitted). It is for a jury to decide whether the above alleged conduct rises to the level of *knowingly* and *affirmatively delivering* alcohol to render him liable at common law for violating Iowa Code § 123.47. *See Garofalo*, 616 N.W.2d at 652 (setting forth standard for liability).

### 3. Conclusion Regarding Count I

For the reasons outlined above, the Court finds summary judgment is appropriately granted on any claim that Busch breached a duty to summon medical assis-

tance on the evening of the party. Summary judgment is denied on plaintiff's attempt to hold Busch liable at common law pursuant to Iowa Code § 123.47, for serving alcohol to underage persons.

### C. Whether Summary Judgment is Appropriate under Count II

Count II of plaintiff's Complaint alleges in relevant part:

19. That subsequent to 12:25[a].m. on March 22, 1998, the Defendant Scott Busch returned to his dormitory room and while Carolyn Freeman was unconscious and incapable of consenting, engaged in sex with her causing bruising and internal injuries as a result of said rape. As a result, Carolyn Freeman has suffered clinical depression, has suicidal tendencies and has incurred medical expenses for psychiatric counseling which is continuing. That the above described rape would not have occurred if medical assistance or an ambulance had been summoned. All for which Defendant Scott Busch and his employer are liable, as the Plaintiff was a guest and invitee of Simpson College, and to whom the Defendant Simpson College owed a special duty.

Complaint ¶ 19. Initially, the Court notes that Count II appears to reallege in part plaintiff's claim of negligence based on Busch's failure to summon medical assistance. Summary judgment is appropriately granted on this claim for the reasons outlined in part II(B)(1) above.

Count II also seeks to recover for damages attributed to Busch's alleged rape of plaintiff, which both parties have since recharacterized as a claim for common law battery.[5] Iowa Civil Jury Instruction 1900.4 defines battery as follows:

---

**5.** The Court notes that although Busch also

addresses the tort of assault, plaintiff's resis-

A battery is committed when a person intentionally does:

1. An act resulting in bodily contact causing physical pain or injury.
2. An act resulting in bodily contact which a reasonable person would deem insulting or offensive.

Iowa Civil Jury Instruction 1900.4. Accordingly, to recover for battery under Iowa law, plaintiff must establish all of the following:

1. The defendant [had nonconsensual intercourse with her];
2. The act was done with the intent to cause [physical pain or injury] or [insulting or offensive bodily contact].
3. The defendant's act resulted in [physical pain or injury] [insulting or offensive bodily contact].
4. The defendant's act was a proximate cause of plaintiff's damage.
5. The amount of damage.

Iowa Civil Jury Instruction 1900.3. In his present motion for summary judgment, Busch contends plaintiff is unable as a matter of law to succeed on this claim because she cannot establish he acted with the intent to cause pain or injury, or insulting or offensive bodily contact.

Neither Instruction No.1900.3 or 1900.4 has been interpreted in a reported decision.[6] The Restatement (Second) of Torts, from which Instruction 1900.4 is derived, defines intent "to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A, 13 (incorporating § 8A for purposes of the

tort of battery). Comment c to Section 13 of the Restatement (Second) of Torts clarifies that for purposes of this section, the actor's feelings toward the other person in initiating the conduct are immaterial; rather, the key issue is whether the other person has consented to the act. *Id.* § 13 cmt. c. For example:

Thus the fact that the defendant who intentionally inflicts bodily harm upon another does so as a practical joke, does not render him immune from liability so long as the other has not consented. This is true although the actor erroneously believes that the other will regard it as a joke, or that the other has, in fact, consented to it. One who plays dangerous practical jokes on others takes the risk that his victims may not appreciate the humor of his conduct and may not take it in good part. So, too, a surgeon who performs an operation upon a patient who has refused to submit to it is not relieved from liability by the fact that he honestly and, indeed, justifiably believes that the operation is necessary to save the patient's life. Indeed, the fact that medical testimony shows that the patient would have died had the operation not been performed and that the operation has effected a complete cure is not enough to relieve the physician from liability.

*Id.*

In an insurance context, the Iowa Supreme Court has held that intent to cause injury or offensive conduct may be inferred for purposes of triggering the "intentional act exclusion" in an insurance policy when the insured engages in a non-

---

tance memorandum focuses solely on the tort of battery. Because plaintiff has failed to respond to Busch's charge that she is unable to establish the necessary elements of assault, the Court finds she has waived her right to seek recovery on this claim at trial.

6. Instruction 1900.4 was outlined in *Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 39 (Iowa 1993) for the limited purpose of determining whether the common law claim of battery was preempted by the Iowa Civil Rights Act.

consensual sexual act. *Altena v. United Fire and Cas. Co.*, 422 N.W.2d 485, 485–86 (Iowa 1988) (concluding "an act of forcible anal intercourse is an act of such a character that an intent to cause injury can be inferred *as a matter of law*") (emphasis in original). The determining issue is whether "the intent to do the act *and* to cause injury may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm." *Id.* at 488 (emphasis added). Once a party has established intent to injure, whether the actual injury caused "is of a different character or magnitude" is immaterial. *Pekin Ins. Co. v. Auto Owners Ins. Co.*, 630 N.W.2d 614, 617 (Iowa Ct.App.2001).

■ Plaintiff alleges in the present case that defendant engaged in sexual intercourse with her knowing that she was either unconscious or incapable of consenting, and that she suffered physical and emotionally injury as a result. Complaint ¶ 19. There is ample evidence in the record to create a material issue of fact as to whether plaintiff was incapacitated by alcohol on the evening at issue and unable to consent to intercourse. *See, e.g.,* IOWA CODE § 709.1A (in criminal context, stating that person may be unable of effectively consenting to a sexual act if that person is "temporarily incapable of apprizing or controlling the person's own conduct due to the influence of . . . [an] intoxicating substance."). Following the analysis set forth in the Restatement and Iowa insurance law, the Court finds a reasonable jury could then find that plaintiff did not consent to intercourse, and that Busch's conduct in performing intercourse was of such a nature that a reasonable jury could infer the requisite intent: that he intentionally acted in a manner that resulted in "bodily

contact causing physical pain or injury," or contact that "a reasonable person would deem insulting or offensive." Iowa Civil Jury Instruction 1900.4. As explained in the Restatement, it is immaterial whether Busch felt any feelings of animosity toward plaintiff. Restatement (Second) of Torts § 13 cmt. c. Busch's motion for summary judgment is appropriately denied with respect to Count II of plaintiff's Complaint.

**D. Whether Summary Judgment Appropriate On Count III**

Under Count III of her complaint, plaintiff contends that after Busch's alleged rape and while plaintiff was still unconscious, Busch "lifted plaintiff's blouse, unfastened her bra, removed her bra from her breasts and invited the Defendants Hatfield and Hildreth first to admire and then to fondle her breasts which each of them did." Complaint ¶ 21.[7] Although plaintiff characterizes this conduct in her Complaint as "sexual assault," her resistance memorandum refers solely to sexual battery, and aiding and abetting a sexual battery. *See* Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 13.

Initially, the Court notes it agrees with Busch that plaintiff's theory she was unconscious or otherwise unable to effectively consent to a sexual act is inconsistent with a claim for common law assault. To recover for civil assault under Iowa law, plaintiff must prove not only that Busch acted with the intent to "put plaintiff in fear of physical pain or injury," or "in fear of physical contact which would be insulting or offensive," but also that plaintiff "reasonably believed that the act would be carried out immediately." Iowa Civil Jury

---

**7.** As under Count 11, the Court notes that Count III appears also to reallege plaintiff's claim of negligence based on the failure to summon medical assistance. *See* Complaint

¶ 22. Summary judgment is appropriately granted on this claim for the reasons outlined in part II(B)(1) above.

Instruction 1900.1. If plaintiff was unconscious or otherwise mentally incapacitated, she would have been unable to experience the requisite fear, or belief "that the act would be carried out immediately." *Id.*

■ Nevertheless, although plaintiff's Complaint does not mention battery per se, the Court finds the facts alleged under Count III support a claim against Busch for battery as clarified in her resistance memorandum.[8] Both Hildreth and Hatfield stated in deposition that Busch performed the acts alleged in the Complaint. *See* Deposition of Gene Hildreth at 62:11–63:6, Plaintiff's Exh. 5; Deposition of John Hatfield at 20:14–21:16, Plaintiff's Exh. 6. Assuming the events took place as described by Hildreth and Hatfield, plaintiff has created a material issue of fact as to whether Busch intentionally acted in a manner "result[ing] in bodily contact which a reasonable person would deem insulting or offensive." Iowa Civil Jury Instruction 1900.4. Summary judgment is denied on plaintiff's claim for battery under Count III.

### D. Conclusion Regarding Summary Judgment Motion

For the reasons outlined above, defendant Scott Busch's motion for summary judgment is denied. Plaintiff may proceed against Busch as follows: 1) under Count I on a theory of *knowingly* and *affirmatively delivering* alcohol to a person under the legal age as proscribed by Iowa Code § 123.47; 2) under Count II for common law battery based on nonconsensual sexual intercourse; and 3) under Count III for common law battery based on nonconsensual sexual touching resulting in bodily contact which a reasonable person would deem insulting or offensive.

---

**8.** The Court is unaware of a civil claim based on "aiding and abetting a battery" as suggested in plaintiff's memorandum.

### III. MOTION TO DISMISS

Busch has also moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Specifically, Busch argues plaintiff has failed to allege damages in an amount in excess of $75,000, as necessary to vest this Court with diversity jurisdiction. *See* 28 U.S.C. §§ 1332 and 1441(b) (federal district court has diversity jurisdiction over a plaintiff's complaint if the amount in controversy exceeds $75,000, exclusive of interest and costs, and the suit is between citizens of different States).

■ The amount in controversy requirement recently was addressed by the Eighth Circuit in *Kopp v. Kopp,* 280 F.3d 883 (8th Cir.2002). After reviewing prior Eighth Circuit and Supreme Court holdings on the issue, the *Kopp* court summarized the relevant law as follows:

> The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000.
>
> .    .    .    .    .
>
> The jurisdictional fact in this case is not whether the damages are greater than the requisite amount, but whether *a fact finder might legally conclude that they are:* In other words, an amount that a plaintiff claims is not "in controversy" if no fact finder could legally award it.

*Id.* at 884 (emphasis added). In the present case, plaintiff seeks to recover for previously incurred medical expenses, including: psychiatric counseling; permanent partial disability of her arm; future surgery, psychiatric and medical expenses; and physical and emotional pain and suffering.[9] *See* Complaint ¶¶ 16, 17, 19, 23.

---

**9.** The Court notes plaintiff has filed an appeal of Chief United States Magistrate Judge Ross A. Walters' order denying her motion to amend her complaint to allege punitive dam-

To support these claims, plaintiff has produced evidence showing that she has incurred medical bills in the approximate amount of $27,000. *See* Plaintiff's May 23, 2000 Answer to Busch's Interrogatory No. 11, Plaintiff's Exh. 1. Nancy Dyl, Ph.D., a psychologist currently treating plaintiff for emotional trauma allegedly arising from the March 21–22, 1998 incident, opined in November, 2001 that plaintiff would need additional counseling for approximately one year. Deposition of Nancy Dyl at 89, Defendant's Exh. C. Plaintiff also has produced physician's reports from Consuelo T. Lorenzo, M.D., a rehabilitation specialist, and Michael Morrisson, M.D., an orthopedic specialist, indicating their beliefs that plaintiff has sustained a total left upper extremity impairment between 12% and 29%. *See* Plaintiff's Exhs. 2–3.

Busch contends that plaintiff is unable to prove Busch's conduct on March 21–22, 1998 was the proximate cause of any of these injuries. Specifically, Kirk Hutton, M.D., an orthopedic specialist who performed an arthroscopy on plaintiff's left shoulder in July 1998, stated in deposition that he could not state to a reasonable degree of medical certainty that plaintiff's shoulder injury was caused by defendant Busch. *See* Deposition of Kirk Hutton, M.D., at 31–34, Defendant's Exh. D. Nevertheless, as clarified by Dr. Morrisson:

> [T]o what degree the incident in March of 1998 contributed to the instability of [plaintiff's] left shoulder would have to be relied upon with the patient's input informing us that she developed these symptoms involving her left shoulder as a result of March 21, 1998 incident since she has already undergone surgical intervention on her left shoulder prior to my evaluation today. Again, to what degree this incident has contributed to instability of her left shoulder has to be

related to the patient's accountability of her symptomatology.

Plaintiff's Exh. 3 at 3. In short, the degree to which Busch's alleged conduct contributed to or exacerbated plaintiff's left arm disability is dependent in part upon plaintiff's own credibility, which is an issue appropriately left to the jury.

Lastly, the Court notes plaintiff seeks damages for emotional pain and suffering. Complaint ¶¶ 16, 19, 21, 23. In view of the nature of the allegations, the Court has no difficulty concluding that at trial, a fact finder "could legally conclude" that plaintiff's combined damages exceed the jurisdictional amount of $75,000. *Kopp*, 280 F.3d at 884.

Busch's motion to dismiss is denied.

IT IS ORDERED.

ages. Plaintiff's proposed claim for punitive damages is not dispositive of Busch's motion to dismiss. Accordingly, the Court will to address plaintiff's appeal in a separate Order.